**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO.: 18-CR-131 (RDM)** |
| **JUAN GUILLERMO NARANJO-HENAO,** **also known as "Diego,"** | |
| **Defendant.** | |

**MOTION TO PRECLUDE DISCLOSURE OF CERTAIN IDENTIFIABLE**
**INFORMATION DURING TRIAL**

The United States of America, by and through the undersigned counsel, requests that the Court issue a protective order to preclude the defense from (1) revealing the identity of the confidential source ("CS") in open court, and (2) examining Government witnesses regarding certain identifying information that could be used to identify or locate the CS. Such information, if revealed, could subject the CS and their family to harassment and significant danger.

I.      **Background**

The investigation in this case involved a CS, who was previously the Defendant's coconspirator. The Defendant and the CS worked with *Cartel de Jalisco Nueva Generacion* ("CJNG") and *Fuerzas Armadas Revolucionarias de Colombia* ("FARC"),[1] two violent drug trafficking organizations, during the course and in furtherance of the charged conspiracy.

The Government has disclosed the identity of the CS and produced related discoverable information and materials to the Defendant pursuant to the protective orders issued in this case. The CS will not be testifying at trial as a Government witness. The CS resides in a geographical area where both the CJNG and FARC operate with ease.

---

[1] FARC is also known as the Revolutionary Armed Forces of Colombia.

1

The CJNG has a longstanding and well known history for intimidating and retaliating against individuals who investigate, prosecute, or cooperate against it. For example, in a recent case prosecuted here in the District of Columbia, the identities of multiple cooperators and witnesses were disclosed in advance of and during the trial of a CJNG leader. As a result, at least five cooperators and their families received death threats by the CJNG, and at least one witness and two family members were murdered in 2025. *See* Memorandum Op. & Ord. at 9-14, *United States v. Ruben Oseguera Gonzalez* (D.D.C. Aug. 13, 2024) (No. 16-229) (granting motion for witnesses to testify in pseudonym and summarizing history of violence by the CJNG, including violence against law enforcement and public officials). In fact, in February 2025, the State Department designated the CJNG as a Foreign Terrorist Organization. *See* U.S. Dept. of State, Designation of International Cartels (Feb. 20, 2025), https://www.state.gov/designation-of-international-cartels. The recent killing of the CJNG's former top leader, Nemesio Oseguera Cervantes, also known as "el Mencho," in particular, has heightened concerns about a surge in violence and retaliation of any perceived enemies. *See, e.g.*, The Associated Press, *A Day After the Mexican Military Killed a Drug Lord, Security Forces Keep Up Fight with Cartel*, N.P.R. (Feb. 23, 2026), https://www.npr.org/2026/02/23/g-s1-111138/mexico-fears-more-violence-after-army-kills-leader-of-powerful-jalisco-cartel.

The FARC is also well known for its use of violence to retaliate, intimidate, and obstruct law enforcement investigations. In *United States v. Celis*, for example, the court noted FARC's publicized death threats and use of violence against perceived enemies and cooperating witnesses. 608 F.3d 818, 829, 832 (D.C. Cir. 2010) (per curiam) (finding that in light of such threats and violence, protective order limiting disclosure of witnesses' identities in open court did not impermissibly infringe on defendants' Confrontation Clause rights). And in this case, the

Government has recorded conversations about FARC's use of violence as well. For instance, in January 2018 recordings, the Defendant told the CS about a FARC dissident member who bombed a law enforcement building located close to the Ecuador-Colombia border in retaliation for a seizure. The Defendant discussed the heightened law enforcement presence in the area to investigate the incident, adding "they're going to have to turn him in so things can settle down." The Defendant continued that "among all the groups, they'll align themselves and, and they'll kill him and they'll turn him over dead," referring to the killing of the FARC dissident member to obstruct and end the investigations at the time, adding that it would take them "a month" to do so.[2]

## II.     Argument

In certain circumstances, limiting disclosure of, or cross-examination about, identifying information to protect the safety of a witness does not infringe upon a defendant's Sixth Amendment right to confront that witness. While "[i]n general, the Confrontation Clause guarantees a defendant the right to question an adverse witness about identifying information, including his full name and address . . . this right is not absolute," and "a trial court may limit cross-examination if the information sought could endanger the witness." *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (quotation marks omitted) (citing *Smith v. Illinois*, 390 U.S. 129, 131 (1968), and *Chavis v. North Carolina*, 637 F.2d 213, 226 (4th Cir. 1980)); *see also Smith*, 390 U.S. at 133-34 (White, J. concurring) (observing that "inquiries which tend to endanger the personal safety" of a witness "may go beyond the bounds of proper cross-examination"). When determining whether to permit limited disclosure of identifiable information at trial, such as testifying under a pseudonym, courts "balance[ ] the reality of potentially life-threatening dangers

---

[2] The original conversation was in Spanish. All translations provided in this motion are draft translations and subject to revision.

to the protected witnesses and their families, and the defense['s] need to prepare to cross-examine the protected witnesses." *Celis*, 608 F.3d at 833. The Government bears the burden of showing "a threat to the witness's personal safety," but it need not show that the "threat to the witness comes directly from a defendant." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1140 (10th Cir. 2014) (collecting cases); *Celis*, 608 F.3d at 832.

Here, the Government's request to not reveal or elicit identifiable information about the CS in open court is appropriate—although the Government does not allege any acts of violence or threats linked to the Defendant. First, the request will not infringe on the Defendant's right or opportunity to effective cross-examination at all, given that the Government disclosed, pursuant to the protective orders in this case, the CS's identity and other relevant discoverable information to the Defendant last year. *See Ramos-Cruz*, 667 F.3d at 501 (noting that because "the government disclosed to the defense details of" the witnesses before the trial, defendants were able to "effectively cross-examine the witnesses without threatening their safety"); *compare with Roviaro v. United States*, 353 U.S. 53, 65 (1957) (finding error where the Government withheld the identity of non-testifying informant). The protective orders have thus far precluded the disclosure of identifying information about the CS, while the Defendant has enjoyed an unrestricted opportunity to prepare for trial and the cross-examination of any Government witness. The full disclosure (under the protective orders) here weighs heavily in favor of granting the Government's request.

Second, the CJNG and the FARC are among the most violent drug trafficking organizations, which were directly involved in the charged conspiracy. As the recordings in this case will show, the Defendant himself expected that FARC and other aligned criminal groups would kill the FARC dissident member involved in the January 2018 bombing to obstruct law enforcement investigations into those groups. The Defendant's statements support a finding in this

4

case that revealing or eliciting any identifiable information about the CS could pose similar grave danger to the CS and their family members, in retaliation for the CS's cooperation with the underlying investigation, especially because they reside in a geographical area where both drug trafficking organizations operate with ease. And while the Government does not allege any acts of violence or threats linked to the Defendant, such direct link is not required for limiting disclosure of the CS's identity or location. *Celis,* 608 F. 3d at 832 ("The appropriateness of using pseudonyms to protect witnesses does not depend on whether the threat to the witness comes directly from a defendant or from another source."). The violent, retaliatory nature of the CJNG and FARC, together with their direct involvement in the underlying conspiracy, are more than enough for the Government to meet its burden to obtain the protective order requested here.

//

//

//

//

//

//

//

//

//

//

//

//

//

5

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant this motion and issue a protective order to preclude the defense from (1) revealing the identity of the CS in open court, and (2) examining Government witnesses regarding certain identifying information that could be used to identify or locate the CS.

Dated: April 3, 2026                    Respectfully submitted,

MARGARET A. MOESER, Chief
Money Laundering, Narcotics and
Forfeiture Section
Criminal Division
U.S. Department of Justice


 /s/   *Lernik Begian*
Lernik Begian
James Hepburn
Trial Attorneys
Money Laundering, Narcotics and
Forfeiture Section
Criminal Division
U.S. Department of Justice
lernik.begian@usdoj.gov
james.hepburn2@usdoj.gov

6

## **Certificate of Service**

I hereby certify that a copy of the foregoing was sent via ECF to counsel of record, this 3rd day of April 2026.

By: _/s/ Lernik Begian_
      Lernik Begian
      Trial Attorney
      Money Laundering, Narcotics
      and Forfeiture Section
      Criminal Division
      U.S. Department of Justice